**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASHRAF MANSOR, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC d/b/a SPECTRUM,<br><br>Defendant. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ashraf Mansor ("Plaintiff" or "Mansor"), on behalf of himself and others similarly situated, by and through his attorneys, Crabill PLLC, hereby alleges as follows against Defendant Charter Communications, LLC d/b/a Spectrum ("Defendant," "Spectrum," or the "Company"):

## NATURE OF THE CLAIMS

1. At Spectrum, hard-working Technicians perform oftentimes demanding physical labor to ensure that New Yorkers have access to the internet, cable television, and the Company's other services.

2. Despite reporting annual revenue of roughly $55 billion in 2024 and 2025[1] and paying its CEO, Christopher L. Winfrey, almost $6.5 million in total compensation in 2025,[2] Spectrum shortchanges Technicians by forcing them to record a 30-minute unpaid meal breaks they never took.

3. Indeed, Spectrum has a policy requiring Technicians to take and record a 30-minute unpaid meal break each workday.

---

[1] *See* Charter Communications 2025 Annual Report (Form 10-K) at p. 40 (last visited November 23, 2026).
[2] *See* Charter Communications 2026 Proxy Statement (SEC Filing) at p. 40 (last visited November 23, 2026).

4. If a Technician fails to record a 30-minute unpaid meal break, then Spectrum disciplines the Technician.

5. At the same time, Spectrum expects Technicians to meet quotas and other productivity metrics.

6. To meet those expectations, Spectrum, through its supervisors and managers, requires Technicians to work through purported meal periods to meet productivity expectations.

7. Nevertheless, even on days during which a Technician did not take any meal break, Spectrum still requires the Technician to record that he took a 30-minute unpaid meal break that workday.

8. Through its unlawful conduct, Spectrum obtained the benefit of Technicians' labor without paying them all their earned wages, including straight-time wages for compensable work performed during purported meal periods and, when that work causes their actual hours to exceed 40 in a workweek, overtime compensation.

9. To redress Spectrum's deplorable wage practices, Plaintiff brings claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all other similarly situated employees who were or are part of the proposed FLSA Collective (defined *infra* ¶ 84) at any time during the full statute of limitations period.

10. Plaintiff also brings claims under the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL") as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself and all other similarly situated employees who were or are part of the proposed Class (defined *infra* ¶ 94) and Subclass (defined *infra* ¶ 96) at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

11. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's, the putative FLSA Collective's, and the putative Class's rights under the FLSA.

12. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's, the putative FLSA Collective's, and the putative Class's related claims arising under State law.

13. Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

### I. Plaintiff Ashraf Mansor

14. Plaintiff is a resident of the State of New York and was employed by Defendant from on or around February 2022 through on or around January 9, 2026.

15. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of all relevant statutes and regulations.

### II. Defendant Charter Communications, LLC d/b/a Spectrum

16. Spectrum is a foreign corporation that provides broadband internet, cable television, mobile, and voice communication services to residential and commercial customers in New York and other states.

17. Spectrum maintains an operations facility located at 59 Paidge Avenue, Brooklyn, New York 11222 (the "Brooklyn Location").

18. At all relevant times, Spectrum controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

19. At all relevant times, Spectrum established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

20. At all relevant times, Spectrum maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

21. At all relevant times, Spectrum was an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

### I. BACKGROUND

22. Spectrum provides broadband internet, cable television, mobile, and voice communication services to residential and commercial customers in New York and other states.

23. To deliver services to its customers, Spectrum, *inter alia*, employs Technicians to install new services, connect and activate equipment, troubleshoot outages or performance issues, repair network lines and customer-premises wiring, and ensure the cable, internet, and phone infrastructure operates reliably at each service location.

24. Technicians typically work five shifts per workweek, with each shift lasting approximately nine hours.

25. At any given time, Spectrum employs over 160 Technicians working at the Company's Brooklyn Location.

26. Spectrum assigns jobs to Technicians through Tech Mobile, a mobile work-order and field-service tool that lets Technicians receive job assignments, record time, notes, photos, and job details, and transmit that information back to the Company's system in real time to track work and support billing and operations.

27. After a Technician receives a job assignment through Tech Mobile, Spectrum requires the Technician to report to the location associated with the job assignment.

28. When a Technician begins commuting to an assigned jobsite, Spectrum mandates that the Technician indicate in Tech Mobile he is "en route" to the jobsite.

29. After a Technician arrives at a jobsite, Spectrum requires the Technician to mark in Tech Mobile that he is "on a jobsite."

30. Then, the Technician performs the work assigned to him related to the jobsite.

31. After a Technician completes his work at a jobsite, Spectrum mandates that the Technician log in Tech Mobile that the work assignment(s) associated with that jobsite have been completed.

32. Next, the Technician proceeds to his next assigned jobsite and repeats the above-referenced process for providing services to customers.

33. Spectrum requires Technicians to continue working until they complete all the jobs the Company assigned to them via Tech Mobile each workday.

## II. WAGE VIOLATIONS

### A. Spectrum Requires Technicians to Record Unpaid Meal Breaks They Did Not Take and Fails to Pay Them for All Hours Worked

34. Spectrum pays Technicians on an hourly basis by tracking how many hours they work and paying them a set amount of money for each hour worked.

35. Spectrum tracks the number of hours Technicians work each workday through its Tech Mobile software application referenced above.

36. Spectrum has a policy requiring Technicians to take at least 30 minutes of unpaid time for lunch each workday.

37. In connection with its lunch-break policy, Spectrum mandates that Technicians record in Tech Mobile that they have taken at least a full 30-minute meal break each workday.

38. If Technicians do not record at least a full 30-minute meal break each workday, Spectrum can and does subject Technicians to punishment, including termination of employment.

39. Although Spectrum requires Technicians to record a 30-minute unpaid meal break in Tech Mobile each workday, Spectrum's supervisors and managers communicate explicit and implicit expectations that Technicians work continuously throughout the workday without actually taking a meal break in order to complete assigned jobs, meet productivity metrics, and avoid discipline.

40. If Technicians do not continuously work throughout the workday and actually stop working to take 30-minute meal breaks, then the Technicians can be and are subjected to discipline, including termination of employment.

41. Indeed, if a Technician fails to log a 30-minute meal break in Tech Mobile, the Technician is often contacted by a manager via email and is instructed to record a 30-minute meal break.

42. To avoid discipline, Technicians typically record a 30-minute unpaid meal break in Tech Mobile each workday even though they do not actually take that break and instead work continuously through the recorded 30-minute period.

43. As a result, Spectrum does not pay Technicians for all hours that they work.

44. Instead, Technicians perform work during periods that Spectrum treats as unpaid meal breaks.

45. Consequently, Spectrum denies Technicians wages they earn performing compensable work during documented and unpaid meal periods, including overtime wages.

**B. Ashraf Mansor**

46. In or around February 2022, Mansor joined Spectrum as a Technician working out of the Company's Brooklyn Location.

47. At all relevant times, Spectrum paid Mansor at an hourly rate for all work he performed for the Company.

48. Throughout his employment, Mansor typically worked Fridays through Tuesdays from around 7:30 a.m. to 4:00 p.m. or Tuesdays through Saturdays from 12:30 p.m. to 9:00 p.m.

49. As a result, Mansor usually worked 42.5 hours during a workweek and was entitled to earn one and one-half times his hourly rate for all hours he worked over 40 hours in a workweek.

50. Soon after starting at Spectrum, Mansor participated in the Company's mandatory 8-week training course for Technicians.

51. Around the same time, Mansor learned about Spectrum's policy requiring Technicians to record a 30-minute unpaid meal break each workday via Tech Mobile.

52. Around May 2022, Mansor completed Spectrum's training course.

53. After completing the course, Mansor accompanied and observed more experienced Technicians while they performed their job duties to learn proper procedures, develop practical skills, and gain hands-on experience.

54. During the period of time during which Mansor accompanied and observed more experienced Technicians, Mansor and the Technicians he shadowed regularly received telephone

calls from supervisors during which the supervisors instructed Mansor and the other Technician to skip lunch and proceed to their next assigned jobsite.

55. Despite instructing Mansor and the other Technician to skip lunch, the supervisors also told Mansor and the other Technician to log a 30-minute unpaid lunch in Tech Mobile.

56. For example, one workday in or around May 2022, Mansor was shadowing a Technician named Sergio.

57. While Mansor was shadowing Sergio, Sergio answered a call from a Field Operations Supervisor named Raul.

58. During the call, Raul told Sergio and Mansor to skip lunch and proceed to their next assigned job.

59. Raul then instructed Sergio and Mansor to record an unpaid 30-minute meal break in Tech Mobile even though they would not actually be taking a meal break that day.

60. After the call with Raul ended, Sergio and Mansor discussed the instructions Raul relayed during the call and how it was unfair that they had to work through lunch while still having to record a 30-minute unpaid meal break in Tech Mobile.

61. On another workday in May 2022, Mansor was shadowing a Technician named Cliff.

62. While Mansor was shadowing Cliff, Cliff answered a call from a Field Operations Supervisor called Rob.

63. During the call, Rob instructed Cliff and Mansor to skip lunch and proceed to their next assigned job.

64. Rob then instructed Cliff and Mansor to record an unpaid 30-minute meal break in Tech Mobile even though they would not actually be taking a meal break that day.

65. Around late June 2022, Spectrum assigned Mansor to work under Lance Barrett ("Barrett"), a Field Operations Supervisor, and start working assignments on his own.

66. From around June 2022 to November 2022, Barrett was out on leave.

67. In or around November 2022, Barrett returned from leave.

68. During most workdays after Barrett returned from leave, Barrett called Mansor and instructed him to work through lunch.

69. Barrett also told Mansor to record a 30-minute unpaid meal break in Tech Mobile even on days when he worked through lunch and did not take any meal break.

70. Around February 2023, Mansor was assigned to work under Alfred Figeroua ("Figeroua"), a Field Operations Supervisor.

71. During most workdays, Figeroua called Mansor and instructed him to work through lunch.

72. Figeroua also told Mansor to record a 30-minute unpaid meal break in Tech Mobile even on days when he worked through lunch and did not take any meal break.

73. In response to Barrett and Figeroua's instructions, and to avoid discipline, on most workdays, Mansor recorded a 30-minute unpaid meal break in Tech Mobile even though he did not actually take a meal break and instead worked continuously through the recorded 30-minute periods.

74. Several times during his employment, Mansor did not record a 30-minute meal break in Tech Mobile on days when he did not take lunch or any other meal break.

75. In response, Spectrum sent Mansor emails stating that he needed to record a 30-minute period in Tech Mobile each workday.

76. As a result of the Company requiring Mansor to record 30-minute meal breaks in Tech Mobile each workday even when he was instructed to work through lunch and did not actually take any meal break most workdays, Spectrum failed to pay Mansor for all hours that he worked.

77. Consequently, Spectrum denied Mansor wages he earned performing compensable work during documented and unpaid meal periods, including overtime wages.

78. Through interactions and conversations with his coworkers, Mansor learned that Spectrum similarly failed to pay other Technicians their earned wages in connection with its policy and practice of requiring Technicians to record unpaid 30-minute meal breaks in Tech Mobile even when they were instructed to work through lunch and did not actually take meal breaks.

79. For example, as referenced above, the Company's Field Operations Supervisors instructed Mansor and the Technicians he shadowed soon after he completed Spectrum's training course to work through lunch but still record a 30-minute meal break in Tech Mobile. *See infra* ¶¶ 56-69.

80. Also, from around September 10, 2024 to around February 14, 2025, Mansor had numerous conversations with Isaias Diaz ("Diaz"), a Technician at Spectrum, about, *inter alia*, supervisors pressuring them to meet quotas, stay on schedule, and get to their next appointments as quickly as possible.

81. Mansor and Diaz also discussed being instructed by supervisors to record 30-minute unpaid meal breaks in Tech Mobile even on days where they were required to work through lunch and did not actually take any meal break.

82. Through its policy and practice requiring Mansor and other Technicians to record 30-minute meal breaks in Tech Mobile each workday even when they were instructed to work

through lunch and did not actually take any meal break most workdays, Spectrum failed to pay Mansor and other Technicians all of their earned wages on their regularly scheduled paydays, resulting in Mansor and other Technicians suffering concrete harm.

83. Specifically, each time Spectrum failed to pay them on time, Mansor and other Technicians were: (i) deprived of money to which they had a right, thereby costing them the time value of their money; (ii) deprived of the opportunity to invest their money; and/or (iii) otherwise unable to use their wages to pay bills and satisfy other financial obligations.

## FLSA COLLECTIVE ACTION ALLEGATIONS

84. Plaintiff brings his FLSA claims as a collective action on behalf of himself and all other similarly situated persons who have been employed by Spectrum as Technicians at the Brooklyn Location at any time during the full statute of limitations period and who worked through one or more purported unpaid meal periods, thereby working more than 40 compensable hours in a workweek, and were not paid overtime compensation for all hours worked in excess of 40 (the "FLSA Collective").

85. At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendant's policy and practice of: (i) requiring Technicians to affirmatively record a 30-minute unpaid meal break in Tech Mobile each workday; (ii) requiring, directing, or pressuring Technicians to perform compensable work during those purported unpaid meal periods; (iii) failing to include time spent working during purported unpaid meal periods in Technicians' recorded hours worked; (iv) understating Technicians' actual hours worked as a result; and (v) failing to pay Technicians overtime compensation at one and one-half times their regular rates of pay for all hours worked in excess of 40 in a workweek.

86. At all relevant times, Defendant has been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that Plaintiff and the members of the FLSA Collective are not exempt from the protections of the FLSA.

87. Defendant's violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

88. As a result of its unlawful conduct, Defendant is liable to Plaintiff and the FLSA Collective for the full amount of their unpaid and late wages, with interest, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

89. While the exact number is unknown to Plaintiff at this time, at any given time, Defendant employs approximately 160 Technicians.

90. As such, upon information and belief, there are likely hundreds of members of the FLSA Collective.

91. Plaintiff is currently unaware of the identities of the individual members of the FLSA Collective.

92. Accordingly, the Court should require Defendant to provide Plaintiff with a list of all members of the proposed FLSA Collective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiff may provide the members of the FLSA Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

## CLASS ACTION ALLEGATIONS

93. Plaintiff brings this action, in part, as a class action under the NYLL, as well as all applicable regulations thereunder.

### A. Class Definition

94. Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and all other similarly situated persons who have been employed by Defendant as Technicians at its Brooklyn Location at any time during the full statute of limitations period and who performed compensable work during one or more purported unpaid meal periods and were not paid for that work (the "Class").

95. Plaintiff alleges, on behalf of himself and the Class, that Defendant violated the NYLL by, *inter alia*: (i) failing to pay Technicians their regular hourly wages for all compensable hours worked, including time spent working through purported unpaid meal breaks; (ii) failing to pay overtime compensation at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 in a workweek; (iii) failing to timely pay all wages earned by Technicians on or before the dates those wages were required to be paid; and (iv) unlawfully withholding wages earned by Technicians for compensable work performed during periods Defendant treated as unpaid meal breaks.

96. Plaintiff also seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and all other similarly situated persons who, in one or more workweeks, worked more than 40 compensable hours when time spent working during purported unpaid meal periods is included and were not paid overtime compensation for all hours worked in excess of 40 (the "Subclass").

97. Plaintiff, the Class, and Subclass have standing to seek such relief because of the adverse effects that Defendant's wage practices have had on them individually and as a group.

98. The wage practices described herein are part of Defendant's normal course of conduct.

99. Pursuant to FRCP 23, Plaintiff's NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class and/or Subclass.

**B. Numerosity and Impracticability of Joinder**

100. The members of the Class and Subclass are so numerous that joinder is impracticable.

101. While the exact number is unknown to Plaintiff at this time, at any given time, Defendant employs approximately 160 Technicians.

102. As such, upon information and belief, there are likely hundreds of members of the Class and Subclass.

103. Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C. Common Questions of Law and Fact**

104. Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and Subclass and predominate over any questions only affecting the members of the Class individually.

105. Indeed, there are few, if any, purely individual issues in this action.

106. The questions of law and fact common to Plaintiff, the Class, and Subclass include, without limitation:

(a) Whether Defendant maintained a common policy or practice requiring Technicians to record a 30-minute unpaid meal break in Tech Mobile each workday;

(b) Whether Defendant, through its supervisors and managers, imposed productivity expectations, job-completion requirements, or disciplinary pressures that caused or pressured Technicians to work through their recorded unpaid meal periods;

(c) Whether Technicians regularly performed work for Defendant's benefit during periods that Defendant recorded and treated as unpaid meal breaks;

(d) Whether the time Technicians spent working through their purported unpaid meal periods constituted compensable time under the NYLL and its implementing regulations;

(e) Whether Defendant knew or had reason to know that Technicians were performing compensable work during their recorded unpaid meal periods;

(f) Whether Defendant's timekeeping and payroll practices excluded compensable meal-period work from Technicians' recorded hours worked;

(g) Whether Defendant's policies and practices resulted in Plaintiff and the Class being paid for fewer hours than they actually worked;

(h) Whether Defendant failed to pay Plaintiff and the Class their regular hourly wages for all compensable straight-time hours worked;

(i) Whether Defendant failed to timely pay Plaintiff and the Class all wages earned within the time required by the NYLL;

(j) Whether Defendant's violations resulted from common policies and practices applicable to Plaintiff and the Class rather than individualized or isolated circumstances;

(k) Whether Defendant acted in good faith and had reasonable grounds to believe that its compensation practices complied with the NYLL;

(l) Whether Plaintiff and the Class are entitled to unpaid straight-time wages, liquidated damages, prejudgment interest, attorneys' fees and costs, and other relief available under the NYLL; and

(m) Whether Defendant's payroll, timekeeping, Tech Mobile, scheduling, productivity, and related records provide common evidence from which the unpaid straight-time wages owed to Plaintiff and the Class can be determined.

107. In addition to the foregoing, questions of law and fact common to Plaintiff and the Subclass include, without limitation:

(a) Whether Defendant failed to include compensable meal-period work when determining whether Plaintiff and the Subclass worked more than 40 hours in a workweek;

(b) Whether Defendant failed to pay Plaintiff and the Subclass overtime compensation at one and one-half times their regular rates of pay for all hours worked in excess of 40 in a workweek;

(c) Whether Plaintiff and the Subclass are entitled to unpaid overtime compensation, liquidated damages, prejudgment interest, attorneys' fees and costs, and other relief available under the NYLL arising from Defendant's failure to pay overtime compensation; and

(d) Whether Defendant's payroll, timekeeping, Tech Mobile, scheduling, productivity, and related records provide common evidence from which the unpaid overtime compensation owed to Plaintiff and the Subclass can be determined.

108. Therefore, the commonality requirement of FRCP 23(a) is satisfied.

## D. Typicality of Claims and Relief Sought

109. Plaintiff's claims are typical of the claims of the members of the Class and Subclass he seeks to represent.

110. Plaintiff, the Class, and the Subclass work, or have worked, for Defendant and are, or were, subject to the same compensation policies and practices.

111. The wage practices suffered by Plaintiff, and the damages resulting therefrom, are typical of Defendant's treatment of the Class and Subclass.

112. Therefore, the typicality requirement of FRCP 23(a) is satisfied.

## E. Adequacy of Representation

113. Plaintiff will fairly and adequately protect the interests of the Class and Subclass because his interests are coextensive and aligned with those of the Class and the Subclass.

114. Plaintiff has no interests adverse to the Class and Subclass he seeks to represent.

115. Plaintiff is willing and able to represent the Class and Subclass as fairly and vigorously as he pursues his similar individual claims.

116. Plaintiff has retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

117. The combined interests, experience, and resources of Plaintiff and his counsel are sufficient to competently litigate the individual, Class, and Subclass claims at issue in this action and satisfy the adequacy of representation requirement of FRCP 23(a).

**F. <u>Requirements of FRCP 23(b)(1)</u>**

118. Without certification of the Class and Subclass, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

119. Accordingly, certification of the Class and Subclass is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Class, and Subclass.

120. By filing this Complaint, Plaintiff preserves the rights of the members of the Class and Subclass with respect to the statute of limitations on their claims.

121. Therefore, not certifying the Class and Subclass would substantially impair and/or impede the ability of the members thereof to protect their interests.

**G. <u>Requirements of FRCP 23(b)(2)</u>**

122. Defendant has acted on grounds, described herein, generally applicable to Plaintiff and the Class by denying Plaintiff and the Class straight-time and overtime wages and failing to pay wages on time.

123. Defendant has acted on grounds, described herein, generally applicable to Plaintiff and the Subclass by denying Plaintiff and the Subclass overtime wages and failing to pay wages on time.

124. These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff, the Class, and the Subclass as a whole.

125. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, the wages detailed herein, timely payment of the same, and the notices detailed herein.

126. Declaratory and injunctive relief are the factual and legal predicates for Plaintiff's, the Class's, and the Subclass's entitlement to monetary and non-monetary remedies for such wage violations.

127. Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H. Requirements of FRCP 23(b)(3)**

128. The common issues of fact and law affecting Plaintiff's, the Class's, and the Subclass's claims—including, without limitation, the common issues identified above—predominate over issues affecting only individual claims.

129. A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's, the Class's, and the Subclass's claims.

130. The cost of proving Defendant's pattern and practice of denying wages and timely payment of the same makes it impractical for the members of the Class and Subclass to pursue their claims individually.

131. This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of the members of the Class and Subclass (*e.g.*, they must have worked for Spectrum during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF FLSA: FAILURE TO PAY OVERTIME**
***(On Behalf of Plaintiff and the FLSA Collective)***

132. Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

133. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

134. At all relevant times, Plaintiff and the FLSA Collective Members were employees within the meaning of the FLSA, and Defendant was their employer within the meaning of the FLSA.

135. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, and Plaintiff and the FLSA Collective Members were covered by the FLSA.

136. Plaintiff and the FLSA Collective Members were hourly, nonexempt employees entitled to overtime compensation pursuant to 29 U.S.C. § 207(a)(1).

137. During the relevant period, Plaintiff and the FLSA Collective Members regularly worked more than 40 hours in individual workweeks.

138. Defendant required, suffered, and permitted Plaintiff and the FLSA Collective Members to perform compensable work during periods that Defendant treated as unpaid meal breaks.

139. Plaintiff and the FLSA Collective Members regularly worked through purported 30-minute unpaid meal breaks while performing work for Defendant's benefit.

140. Because Plaintiff and the FLSA Collective Members were not completely relieved from duty during these periods, the time they spent working through their purported meal breaks constituted compensable hours worked under the FLSA.

141. Defendant nevertheless excluded this time from Plaintiff's and the FLSA Collective Members' recorded and compensated hours of work.

142. As a result, Defendant understated the actual number of hours worked by Plaintiff and the FLSA Collective Members during workweeks in which they worked more than 40 hours.

143. Defendant knew or had reason to know that Plaintiff and the FLSA Collective Members were performing compensable work during purported unpaid meal periods but failed to include that time in calculating their total hours worked and overtime compensation.

144. Defendant's failure to compensate Plaintiff and the FLSA Collective Members for all overtime hours worked was not isolated or inadvertent, but resulted from Defendant's common policies and practices requiring Technicians to record 30-minute unpaid meal breaks in Tech Mobile while simultaneously imposing productivity expectations and supervisory directives that caused or pressured Technicians to work continuously through those periods in order to complete assigned jobs, meet productivity metrics, and avoid discipline.

145. By failing to count the compensable time Plaintiff and the FLSA Collective Members spent working through purported unpaid meal periods, Defendant failed to pay them overtime compensation at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 in a workweek, in violation of 29 U.S.C. § 207(a)(1).

146. Defendant's violations of the FLSA were willful because Defendant knew or showed reckless disregard for whether its conduct violated the FLSA.

147. Plaintiff brings this claim on behalf of himself and all similarly situated employees pursuant to 29 U.S.C. § 216(b).

148. As a direct and proximate result of Defendant's violations of the FLSA, Plaintiff and the FLSA Collective Members have suffered damages in the amount of their unpaid overtime compensation.

149. Pursuant to 29 U.S.C. § 216(b), Plaintiff and the FLSA Collective Members are entitled to recover their unpaid overtime compensation, an equal amount as liquidated damages, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF FLSA: LATE PAYMENT OF OVERTIME COMPENSATION
***(On Behalf of Plaintiff and the FLSA Collective)***

150. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

151. At all relevant times, Plaintiff and the FLSA Collective Members were employees within the meaning of the FLSA, and Defendant was their employer within the meaning of the FLSA.

152. At all relevant times, Plaintiff and the FLSA Collective Members were covered, nonexempt employees entitled to the protections of the FLSA.

153. The FLSA requires employers to timely pay employees all minimum wages and overtime compensation required by the Act.

154. Overtime compensation required by the FLSA generally must be paid on the employee's regular payday for the period in which the relevant workweek ends.

155. During the relevant period, Defendant failed to timely pay Plaintiff and the FLSA Collective Members all overtime compensation required by the FLSA on their regularly scheduled paydays.

156. Specifically, Defendant failed to pay Plaintiff and the FLSA Collective Members all overtime compensation due for hours worked in excess of 40 in a workweek by the regular payday on which such compensation was due.

157. Defendant's failure to timely pay Plaintiff and the FLSA Collective Members was not an isolated or inadvertent occurrence, but resulted from Defendant's common policies and practices concerning the calculation, recording, processing, and payment of compensable hours and overtime wages.

158. By failing to timely pay Plaintiff and the FLSA Collective Members all overtime compensation required by the FLSA when such wages became due, Defendant violated 29 U.S.C. § 207.

159. Defendant's violations of the FLSA were willful because Defendant knew or showed reckless disregard for whether its failure to timely pay wages violated the FLSA.

160. Plaintiff brings this claim on behalf of himself and all similarly situated employees pursuant to 29 U.S.C. § 216(b).

161. As a direct and proximate result of Defendant's violations of the FLSA, Plaintiff and the FLSA Collective Members were deprived of the timely use of wages to which they were statutorily entitled.

162. Pursuant to 29 U.S.C. § 216(b), Plaintiff and the FLSA Collective Members are entitled to recover any unpaid overtime compensation, liquidated damages under 29 U.S.C. 216(b), reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF NYLL: FAILURE TO PAY OVERTIME
**(*On Behalf of Plaintiff and the Class)***

163. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

164. At all relevant times, Plaintiff and the New York Class Members were employees within the meaning of the NYLL, and Defendant was their employer within the meaning of the NYLL.

165. Plaintiff and the New York Class Members were hourly, nonexempt employees entitled to overtime compensation under the NYLL and its implementing regulations.

166. Pursuant to 12 N.Y.C.R.R. § 142-2.2, Defendant was required to compensate Plaintiff and the New York Class Members at one and one-half times their regular rates of pay for all hours worked in excess of 40 in a workweek.

167. During the relevant period, Plaintiff and the New York Class Members regularly worked more than 40 hours in individual workweeks, including compensable time spent working during periods that Defendant treated as unpaid meal breaks.

168. Defendant required, suffered, and permitted Plaintiff and the New York Class Members to perform compensable work during periods that Defendant treated as unpaid meal breaks.

169. Plaintiff and the New York Class Members regularly worked through purported 30-minute unpaid meal breaks while performing work for Defendant's benefit.

170. Because Plaintiff and the New York Class Members were not completely relieved from their work duties during these periods, the time they spent working through their purported meal breaks constituted compensable hours worked.

171. Defendant nevertheless excluded this compensable time from Plaintiff's and the New York Class Members' recorded and compensated hours of work.

172. As a result, Defendant understated the actual number of hours worked by Plaintiff and the New York Class Members during workweeks in which they worked more than 40 hours.

173. Defendant knew or had reason to know that Plaintiff and the New York Class Members were performing compensable work during purported unpaid meal periods but failed to include that time in calculating their total hours worked and overtime compensation.

174. Defendant's failure to compensate Plaintiff and the New York Class Members for all overtime hours worked was not isolated or inadvertent, but resulted from Defendant's common policies and practices requiring Technicians to record 30-minute unpaid meal breaks in Tech Mobile while simultaneously imposing productivity expectations and supervisory directives that caused or pressured Technicians to work continuously through those periods in order to complete assigned jobs, meet productivity metrics, and avoid discipline.

175. By failing to count the compensable time Plaintiff and the New York Class Members spent working through purported unpaid meal periods, Defendant failed to pay them overtime compensation at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 in a workweek, in violation of the NYLL and 12 N.Y.C.R.R. § 142-2.2.

176. As a direct and proximate result of Defendant's violations of the NYLL, Plaintiff and the New York Class Members have suffered damages in the amount of their unpaid overtime compensation.

177. Defendant cannot establish that it acted in good faith or had reasonable grounds to believe that its failure to pay Plaintiff and the New York Class Members all overtime compensation due complied with the NYLL.

178. Pursuant to NYLL § 663, Plaintiff and the New York Class Members are entitled to recover their unpaid overtime compensation, liquidated damages equal to 100% of the unpaid wages, prejudgment interest, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF NYLL: FAILURE TO PAY ALL EARNED WAGES
***(On Behalf of Plaintiff and the Class)***

179. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

180. At all relevant times, Plaintiff and the New York Class Members were employees within the meaning of the NYLL, and Defendant was their employer within the meaning of the NYLL.

181. Plaintiff and the New York Class Members were hourly employees and were entitled to receive wages at their regular hourly rates for all compensable hours worked.

182. During the relevant period, Defendant required, suffered, and permitted Plaintiff and the New York Class Members to perform compensable work during periods that Defendant treated as unpaid meal breaks.

183. Specifically, Plaintiff and the New York Class Members regularly worked through purported 30-minute unpaid meal breaks while performing work for Defendant's benefit.

184. Despite requiring, suffering, and permitting this work, Defendant treated these periods as unpaid time and failed to compensate Plaintiff and the New York Class Members for the work they performed during those periods.

185. Defendant knew or had reason to know that Plaintiff and the New York Class Members were performing work during these purported unpaid meal periods but nevertheless failed to compensate them for that work.

186. The compensation earned by Plaintiff and the New York Class Members for these hours constitutes "wages" within the meaning of the NYLL.

187. By failing to pay Plaintiff and the New York Class Members wages for all compensable hours worked, Defendant unlawfully withheld earned wages and engaged in an unauthorized failure to pay wages in violation of NYLL § 193.

188. Defendant also paid Plaintiff and the New York Class Members less than the wages to which they were entitled by failing to compensate them at their regular hourly rates for all compensable straight-time hours worked, entitling them to recover the resulting underpayments pursuant to NYLL §§ 193 and 198.

189. Defendant's failure to compensate Plaintiff and the New York Class Members for all hours worked was not isolated or inadvertent, but resulted from Defendant's common policies and practices requiring Technicians to record 30-minute unpaid meal breaks in Tech Mobile while simultaneously imposing productivity expectations and supervisory directives that caused or pressured Technicians to work continuously through those periods in order to complete assigned jobs, meet productivity metrics, and avoid discipline.

190. As a direct and proximate result of Defendant's violations of the NYLL, Plaintiff and the New York Class Members have suffered damages in the amount of their unpaid straight-time wages.

191. Pursuant to the NYLL, Plaintiff and the New York Class Members are entitled to recover their unpaid wages, liquidated damages, prejudgment interest, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES**
***(On Behalf of Plaintiff and the Class)***

192. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

193. At all relevant times, Plaintiff and the New York Class Members were employees within the meaning of the NYLL, and Defendant was their employer within the meaning of the NYLL.

194. Plaintiff and the New York Class Members were manual workers within the meaning of NYLL § 190(4) because they spent more than twenty-five percent of their working time performing physical labor.

195. Pursuant to NYLL § 191(1)(a), Defendant was required to pay Plaintiff and the New York Class Members all wages earned on a weekly basis and no later than seven calendar days after the end of the week in which those wages were earned.

196. During the relevant period, Plaintiff and the New York Class Members earned wages for all compensable hours worked, including straight-time and overtime wages for compensable work performed during periods that Defendant treated as unpaid meal breaks.

197. Defendant failed to pay Plaintiff and the New York Class Members all wages they earned by the dates on which those wages were required to be paid.

198. Specifically, Defendant failed to include compensation for all hours worked in Plaintiff's and the New York Class Members' regular wage payments, thereby withholding earned wages beyond the statutorily required payment date.

199. To the extent Defendant subsequently paid Plaintiff and the New York Class Members some or all of the wages that had previously been withheld, those payments were made after the wages became due and therefore constituted untimely payments of earned wages.

200. Defendant knew or had reason to know that Plaintiff and the New York Class Members had performed compensable work for which wages were due but failed to timely pay them the full amount of wages earned.

201. Defendant's failure to timely pay all earned wages was not isolated or inadvertent, but resulted from Defendant's common policies and practices requiring Technicians to record 30-minute unpaid meal breaks in Tech Mobile while simultaneously imposing productivity expectations and supervisory directives that caused or pressured Technicians to work continuously through those periods in order to complete assigned jobs, meet productivity metrics, and avoid discipline.

202. By failing to pay Plaintiff and the New York Class Members all wages earned within the time required by law, Defendant violated NYLL § 191.

203. Defendant's failure to pay all earned wages when due also constituted an unauthorized failure to pay wages within the meaning of NYLL § 193(5).

204. As a direct and proximate result of Defendant's violations of the NYLL, Plaintiff and the New York Class Members were deprived of the timely receipt and use of wages they had already earned.

205. Pursuant to NYLL § 198, Plaintiff and the New York Class Members are entitled to recover all unpaid wages that remain due, damages arising from Defendant's untimely payment of wages, prejudgment interest, liquidated damages to the extent authorized by law, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the FLSA Collective Members and New York Class Members, respectfully requests that the Court enter judgment in their favor and against Defendant and award the following relief:

A. An order conditionally certifying this action as a collective action pursuant to 29 U.S.C. § 216(b), authorizing notice to similarly situated employees, and permitting them to opt into this action;

B. An order certifying the New York Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

C. A declaration that Defendant violated the Fair Labor Standards Act by failing to compensate Plaintiff and the FLSA Collective Members for all overtime hours worked;

D. A declaration that Defendant violated the Fair Labor Standards Act by failing to timely pay Plaintiff and the FLSA Collective Members all wages required by the FLSA when those wages became due;

E. A declaration that Defendant violated the New York Labor Law and its implementing regulations by failing to compensate Plaintiff and the New York Class Members for all compensable hours worked;

F. A declaration that Defendant violated the New York Labor Law and its implementing regulations by failing to pay Plaintiff and the New York Class Members overtime compensation for all hours worked in excess of 40 in a workweek;

G. A declaration that Defendant violated the New York Labor Law by failing to timely pay Plaintiff and the New York Class Members all earned wages when those wages became due;

H. An award to Plaintiff and the FLSA Collective Members of all unpaid overtime compensation due under the FLSA;

I. An award to Plaintiff and the FLSA Collective Members of liquidated damages pursuant to 29 U.S.C. § 216(b);

J. An award to Plaintiff and the New York Class Members of all unpaid straight-time wages, overtime wages, and other earned wages due under the NYLL;

K. An award to Plaintiff and the New York Class Members of liquidated damages pursuant to the NYLL, to the fullest extent permitted by law and without duplicative recovery;

L. An award of all damages available for Defendant's untimely payment of wages under the FLSA and NYLL, to the fullest extent permitted by law;

M. An award of prejudgment interest on all amounts for which prejudgment interest is recoverable under the NYLL;

N. An award of post-judgment interest as provided by law;

O. An award of reasonable attorneys' fees. Costs, and expenses pursuant to the FLSA and NYLL; and

P. Such other and further legal or equitable relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself, the FLSA Collective, the Class, and the Subclass, hereby demands a trial by jury on all issues of fact and damages.

Dated: November 23, 2026
Queens, New York

**CRABILL PLLC**

By: ______________________
Taylor J. Crabill

71-01 Austin Street
Forest Hills, New York 11375
Tel: (727) 335-1030
tcrabill@crabilllawfirm.com

*Attorney for Plaintiff and the Proposed FLSA Collective and Class*